FORM TO BE USED BY A PERSON FILING A PETITION FOR
WRIT OF HABEAS CORPUS UNDER 28 U.S.C. §2241

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

2015 DEC 18  PM 12: 05

CLERK'S OFFICE
AT BALTIMORE

BY_____ DEPUTY

Joshua Moses  05/11/81

#55716-066

FCI-Cumberland, P.O. Box 1000

Cumberland, MD 21501

(Full name, date of birth, identification
number and address of the petitioner)

v.

Civil Action No. TDC-15-3875
(Leave blank.  To be filled in by Court.)

Timothy S. Stewart,

S. Mohamed Moubarek,

Maria Ariza, Stephany McGann,

Jamie Hamilton-Rumer, Alison Foote, et al.

(Full name and address of the respondent(s))

14601 Burbridge Rd.
SouthEast
Cumberland, MD 21502

PETITION FOR WRIT OF HABEAS CORPUS

I.   **Background**

   A.   Where are you detained?

      ☑ Federal Prison

      ☐ State Prison

      ☐ Local Jail or Detention Center

      ☐ Mental Health Facility

      ☐ Other, describe _____

   B.   If you have been convicted and sentenced, provide the following information:

1.  Name and location of court which imposed sentence: U.S. District Court - Eastern District of Pennsylvania - Phila. .

2.  Your criminal case number(s): DPAE2:14CR0232-01 .

3.  The date you were sentenced: May 12, 2015 .

4.  The charges on which you were convicted: 18:922(g)(1) 

_____ .

**C.**  If you are awaiting trial on criminal charges, provide the following information:

1.  Name and location of court in which charges are pending: N/A 

_____ .

2.  Your criminal case number(s): N/A .

3.  List any hearing or trial dates which have been scheduled: N/A 

_____ .

4.  List the charges that are pending against you: N/A 

_____ .

5.  Your attorney's name, address and telephone number: N/A 

_____ .

**D.**  If you are detained in a mental health facility, provide the following information:

1.  How were you committed?

☐ By a court for evaluation.

☐ By a court after being found not criminally responsible.

☐ Involuntary civil commitment.

☐ Other, explain, N/A 

_____ .

2. When were you committed? __N/A__.

## II.    Previous lawsuits

**A.**    Have you filed other cases or motions in state or federal court dealing with the same facts as in this case?

YES ☐      NO ☑

**B.**    If you answered YES, describe that case(s) or motion(s) in the spaces below.

1.    Type of case or motion: __N/A__

2.    Parties to the other case(s):

Petitioner: __N/A__

Respondent(s): __N/A__

3.    Court (if a federal court name the district; if a state court name the city or county): __N/A__

4.    Case No.: __N/A__

5.    Date filed: __N/A__

6.    Name of judge that handled the case: __N/A__

7.    Disposition (won, dismissed, still pending, on appeal): __N/A__

8.    Date of disposition: __N/A__

## III.    Administrative proceedings

**A.**    If you are in a Division of Correction facility, did you file an administrative remedy procedure request under DCD 185-001, et seq.?

YES ☐      NO ☑

1.    If you answered YES:
   **a.**    What was the result? __N/A__

N/A

    **b.**    Did you appeal to the Commissioner?

            YES ☐        NO ☑

2.    If you answered NO to either of the questions above, explain why you did not file an administrative remedy procedure request or an appeal to the

    Commissioner. ___N/A_____

3.    Did you file any other type of administrative complaint such as an appeal to the warden of an adjustment decision?

            YES ☐      NO ☑

4.    If you answered YES, explain what you filed and what was the result.

    N/A _____

**B.**    If you are in a Division of Correction facility **or** Patuxent Institution, did you file a complaint with the Inmate Grievance Office?

        YES ☐      NO ☑

1.    If you answered YES:

    **a.**    What was the result? ___N/A_____

**b.** Did you appeal to the Circuit Court?

YES ☐          NO ☑

**c.** What was the result? ___N/A___

___.

**d.** Did you file an application for leave to appeal to the Court of Special Appeals?

YES ☐          NO ☑

**e.** What was the result? ___N/A___

___.

**C.** If you are a state prisoner challenging a parole revocation decision, complete the following.

**1.** Date of revocation decision: ___N/A___

**2.** Did you appeal the revocation decision to the Circuit Court?

YES ☐          NO ☑

**3.** If you answered YES, what was the date of the Circuit Court's decision and what was the decision?

___N/A___

___

**4.** Did you appeal the decision of the Circuit Court?

YES ☐          NO ☑

**5.** If you answered YES, what was the result and the date of the decision?

___N/A___

___

**D.**    If you are in a Federal facility, did you attempt to resolve your complaint informally?

YES ☑    NO ☐

1.    If you answered YES:

    **a.**    Did you file a formal complaint to the warden?

    YES ☑    NO ☐

    **b.**    Did you appeal the warden's decision to the Regional Director?

    YES ☑    NO ☐

    **c.**    Did you appeal the Regional Director's decision to the Office of General Counsel?

    YES ☑    NO ☐

    **d.**    What was the result? Denied as stated and explained elsewhere in this petition.

2.    If you answered NO to any of the questions above, explain why you did not file an administrative complaint or appeal .

N/A

**E.**    If you are a federal prisoner challenging a parole revocation decision, complete the following.

1.    Date of revocation decision: N/A .

2.    Did you appeal the revocation decision to the National Appeals Board?

YES ☐    NO ☑

3.    If you answered YES, what was the date of the National Appeals Board's

decision and what was the decision.

_____N/A_____

_____

F.    If you are <u>not</u> in a Division of Correction or Federal facility, is there a grievance procedure at your institution?

YES ☐    NO ☑

If your answer is YES:

1.    Did you file a grievance?

YES ☐    NO ☑

2.    If you filed a grievance what was the result? __N/A__

_____

3.    If you did not file a grievance explain why not? __N/A__

_____

IV.   **Statement of claim**
      (Briefly state the facts of your case.  Include dates, times, and places.  Explain why you
      believe you are improperly detained.  If you are making a number of related claims,
      number and explain each claim in a separate paragraph.)

I believe I am being improperly detained here at
Cumberland because I received points for a detainer
that does not exist. As a result, I am also alleging
cruel and unusual punishment, deliberate indifference,
and a denial of adequate medical care in violation of
the Eighth Amendment to the United States Constitution, and
violation of the due process clause of the Fifth and
Fourteenth Amendment to the United States Constitution

V.    **Relief**
      (State briefly what you want the Court to do for you)

I seek an injunction mandating that I receive adequate
assessment & treatment by a qualified specialist outside this prison
and a medical transfer.
**I DECLARE UNDER THE PENALTIES OF PERJURY THAT THE INFORMATION
ABOVE IS TRUE AND CORRECT.**

SIGNED THIS __6__ day of, __December__ __.2015__

Joshua Moses
(original signature of petitioner)

FCI-Cumberland

P.O. Box 1000

Cumberland, MD 21501
(address of petitioner)

Petitioner expressly asks the Court to consider the merits of his claim to determine whether the defendants are liable.

Jurisdiction

1.) The Court has jurisdiction over the petitioners' claims of violation of federal constitutional rights under 42 U.S.C. §§ 1331(a) and 1343.

Parties

2) Petitioner, Joshua Moses, presently incarcerated at Cumberland Federal Correctional Institution and during the events described in this petition.

3.) Defendant Timothy S. Stewart is the Warden of Cumberland and is responsible for all Staff and Inmates at Cumberland.

4.) Defendant Maria Arviza is the Associate Warden of Operations at Cumberland, and is in charge of the supervision and discipline of all correctional staff at Cumberland. She is also responsible for getting prisoners to their outside medical appointments.

5) Defendant Jamie Hamilton-Rumer is the Health Services Administrator at Cumberland and is generally responsible for ensuring the provision of medical care to prisoners and specifically for scheduling medical appointments outside the prison when a prisoner needs specialized treatment or evaluation.

6) Defendant Stephany McGann is the Physician at Cumberland and is in charge of providing care and recognizing a prisoners treatment needs and diagnosis.

7) Defendant Alison Foote is the Assistant Health Service Administrator and is generally responsible for ensuring the provision of medical care to prisoners and recognizing a prisoners special needs, treatment, and evaluation.

8) Defendant S. Mohamed Moubarek is the Clinical Director at Cumberland and is in charge of all medical staff and medical supervision.

9) Defendants Todd, Hall, Vanmeter, Boch and Swick are all duty nurses at Cumberland and are responsible for sick calls, treating prisoner complaints, and documenting all issues to primary providers and administrators.

10.) Defendant Connor is the Unit Manager and is the administrative head of the general unit and oversees all unit programs and activities. She is the Chairperson of the unit team which comprises the Case Manager, Counselor, with input from Education and Psychology Staff.

11.) Defendant Fazenbaker is the Case Manager and is responsible for all casework services and prepares classification material, progress reports, release plans, correspondence and other materials relating to the inmates committment. She serves as a liaison between the inmate, the administration and community.

12.) Defendant M. Muir is the Correctional Counselor and is responsible for providing counseling and guidance for the inmates of the unit in areas of institutional adjustment, personal difficulties, and plans for the future.

13.) Defendant Hershenberger is the Psychologist here at Cumberland and is responsible for screening, assessment and treatment of mental health or drug abuse problems, individual or group counseling, self help and supportive services.

14.) All defendants have acted, and continue to act, under color of federal law at all times relative to this complaint.

15.) All defendants are sued severally and jointly, and in their individual and official capacities.

Facts

16.) On August 9, 2009 petitioner suffered traumatic and catastrophic injuries from being shot multiple times. Petitioner was shot through both lungs, kidneys, liver, chest, stomach and buttocks. He was taken to Temple University Hospital (TUH) in Philadelphia, PA in critical condition.

17.) Petitioner has had multiple failed surgeries x 3, he had a tracheotomy and was fed intravenously for over a year on TPN (Total Parental Nutrition). On September 14, 2010 he had small bowel resection. He had 3 enterocutaneous fistulas via small bowel resection x 2, and transverse colon resection. Trauma doctors had to stop and call in Plastic Surgeons and combine generally both surgeries. Petitioner had abdominal wall reconstruction with lateral rectus release and bioprosthetic mesh replacement with skin grafts from both thighs over his abdomen

See Exhibit #1

He had his appendix removed and was left
with only 105 cm of small bowel. Trauma doctors
explained that it was just enough to digest food
and drink, and petitioner could still be a
candidate for a small bowel transplant, as this
was originally considered.

18.) On May 13, 2014 petitioner entered federal custody
and was held at the Federal Detention Center in
Philadelphia, Pennsylvania. (F.D.C.-Phila)

19.) In October of 2014 (October 30th) petitioner
developed extreme pain in his stomach and
noticed a small black wire sticking out of his
stomach thru his undershirt and immediately
became nauseas, and notified Health Services at
F.D.C.-Phila. This issue was not addressed.

Cruel and Unusual Punishment

20.) In November 2014 after repeated complaints to
Health Services, Dr. Hoey and PA Fausto, petitioner
then began communicating this issue to Ms. Baker,
Associate Warden of Operations at F.D.C-Phila. On
11-17-14 via e-mail response, petitioner was told: as for
the metal wire sticking out of your stomach, it is
very small and can be covered with a band-aid.

See
Exhibit #2

Medical staff determined that no medical intervention was necessary to address this issue at that time. Leaving petitioner in extreme pain.

21.) Fearing the worse, petitioner began the Administrative Remedy to the Northeast Regional Office in January 2015 realizing that a remedy for unsafe conditions need not await a tragic event. However, on January 15th, 2015 petitioner was awakened at 4:30am for Court but instead of going to Court, he were transferred to George W. Hill Correctional Facility and placed in a suicide cell on a medical unit for 7 days and only had one shower. And one phone call.

22.) Petitioner contacted his attorney Christopher G. Furlong with his one call and managed to get a letter out to United States Judge L. Felipe Restrepo (ED.Pa.) detailing cruel and unusual punishment, as well as the harrowing disadvantages of being a federal prisoner housed in a County Jail, for filing complaints against the actors at F.D.C.-Phila. On January 22, 2015 petitioner returned to F.D.C. Phila.

See Exhibit #3

23.) Upon return to F.D.C. Phila, petitioner again notified Health Services of his pain and suffering, and now having lost a total of 25 pounds, which was documented but petitioner was not sent to an

outside specialist for evaluation or treatment for
his deteriorating condition. Petitioners Father and
other family members began calling F.D.C. officials
almost daily concerning inadequate care of his
serious condition and extreme pain.

24.) On May 26, 2015 petitioner was transferred to
Cumberland from F.D.C. Phila., and at that time
made his condition known to intake staff, as well
as petitioners prescription for Esophagitis which was
Zantac 150 mg 2x daily. Defendant Fazenbaker
was present and addressed petitioner as the guy
who's been shot up a whole bunch of times. She
smiled and told petitioner to send Health Services
an e-mail and stated that the Clinical Director
here at Cumberland is very strict.

25.) On 6-2-15 petitioner e-mailed Health Services
concerning the metal wire sticking out of his
stomach, pain, and nausea. Petitioner also
requested an MRI be performed.

26.) Petitioner was instructed to report immediately to
Health Services to be seen for his complaint on 6-2-15.
Defendant McGann was present and told plaintiff
pain meds (Tylenol) would be ordered because
anything else could damage petitioners organs due
to his Creatinine being high, and that an x-ray

would be ordered. Petitioner was then asked to sign a medical release form to obtain his civilian medical records given his extensive injuries and surgeries. Defendant McGann then asked petitioner why didn't he take care of this mess at F.D.C. Phila. because she see in the computer that this issue has been ongoing? Petitioner politely explained that he relies on prison authorities for care and then asked McGann is this the appropriate response from a doctor in charge of giving immediate, necessary medical care?

27) After not having received any pain medication, follow-up care or treatment to address petitioners even worsening condition he began the administrative remedy process on 7-17-15.

See
Exhibit #4

28) Plaintiffs civilian medical records were obtained from Temple University Hospital on 7-16-15. Petitioner also complains to Unit Team members for medical transfer and is lied to about having a detainer from Philadelphia and extra custody points as a result of the detainer that never existed. Petitioner also begins the Administrative Remedy Process on this issue.

29) Petitioner continues to e-mail Health Services of his extreme pain and many symptoms but is denied

access to medical personnel qualified to make an informed decision or judgement about his particular medical condition.

30) On 8-17-15 petitioner noticed the small nodular area that was previously noted by F.D.C. Phila., and Cumberland medical staff to be there, start leaking clear fluid from the scar incision at the bottom of petitioner's stomach. This was not addressed.

31) On 8-26-15 after repeatedly and consistently complaining of pain and suffering, petitioner has an encounter with defendant McGann who notifies defendant Moubarek and states that he needs to take a look at petitioners stomach, concerning the metal wire and now the leaking, with infectous smells. Defendant Moubarek states to petitioner that no surgeon is going to touch his stomach, so he is not sending petitioner outside to see anyone "Just keep it covered" and it will be "alright." Petitioner then questioned the basis of this unsupported speculation and no answer was supplied.

See Exhibit #5

32) On 8-26-15 defendant Moubarek denied the request for CT scan saying it was elective or not medically necessary. Petitioner fearing the worse contacted his attorney Christopher G. Furlong, who began faxing defendant Foote, and Temple University Hospital for

See Exhibit #6

medical opinions and recommendations given
petitioners particular condition and problems.

33) On 8-27-15 defendant Stewart responded to the
request for Administrative Remedy filed 7-17-15, saying
that they will continue to investigate the proper treat-
ment for the wire mesh that is showing thru the
skin graft, and denied petitioners request to be
sent outside the prison for proper evaluation and
treatment. Defendant Stewart also determined that
plaintiff was receiving the appropriate treatment
and did not meet the medical requirement to be sent
to an outside hospital.

See
Exhibit #7

   Courts have said the Constitution is violated if
deliberate indifference causes an easier less
efficacious treatment to be consciously chosen by the
doctor. Williams v. Vincent, 508 F.2d 541 (2d Cir. 1974)
accord McElligott v. Foley, 182 F.3d 1248 (11th Cir. 1999)
(holding failure to inquire further into, and treat, plaintiffs
severe pain and repeated delays in doctors seeing
patient, could support a finding of taking an easier
less efficacious course of treatment.

34) Petitioner appeals defendant Stewarts response on
8-27-15 citing deliberate indifference to his serious
medical needs and requested to be transferred to
the appropriate medical facility.

35) Petitioner continuously complains of pain, vomiting,
diarrhea and asked for pictures to be taken of his
abdomen. On 9-15-15 petitioner signed a consent form
for medical photography wherein several photos were
taken by Ms. Vorhees, a medical records technician,
with defendant McGann supervising and directing.

See
Exhibit #8

36) On 9-30-15 petitioner who just the day before hand-
wrote requests for care plan updates to defendants
Moubarek and Hamilton-Rumer, was present for
dressing change had another encounter with defendant
Moubarek, who entered the dressing room and
instructed defendant Hall who was the duty nurse
performing dressing change to stop and leave the
wound open. Moubarek then told petitioner to come
with him to a back room where defendants Foote
and Hamilton-Rumer was present. Defendant Moubarek
began this secret intimidation meeting saying why did
petitioner handwrite him a request, and why do the
petitioner keep filing complaints against them?
Petitioner informed Moubarek that his stomach is open
to infection because Moubarek just told the duty nurse
to leave it open and that this reckless disregard and
complete denial of adequate care is not a disagreement
with treatment decisions, it's deliberate indifference.
Petitioner asked Moubarek to respond to his request
for care plan update as his condition is getting bad
within which Moubarek states he dont have to

respond by policy and nothing is going to be done for petitioner so just take us to Court and we will win. Petitioner excused himself and asked the duty nurse to apply a dressing to his open wound within which she defendant Hall stated did Moubarek say to apply it and petitioner waited while she asked him what to do next. Petitioner immediately began another Administrative Remedy on 10-3-15 concerning this encounter with Moubarek, Foote, and Hamilton-Runer.

See Exhibit #9

37) Petitioner began documenting his encounters with Health Services to defendants Arviza and Stewart via e-mail to place them on notice of dilatory tactics being used to try and conceal their wrongdoing.

38) Petitioner became ill on the rec yard 10-4-15 and vomited blood. The rec officer made a call to send petitioner to Health Services. Defendant Boch was the duty nurse and observed petitioner for approximately 30 minutes then treated petitioner with the instruction to purchase Tylenol from Commissary on his store day. Petitioner informed Boch that he also suffers from Gerd and needed a refill to his prescription of 150 mg Zantac 2x daily. Defendant Boch informed the petitioner that his prescription was discontinued by the doctor here on 6-26-15, and then told petitioner to purchase the 75 mg version from Commissary for 3 months and show medical staff

See Exhibit #10

the receipts. When petitioner questioned how could anyone discontinue a medication prescribed that petitioner clearly demonstrated a need for, without an examination, which is medical record fraud, defendant Boch gave petitioner a bogus incident report for lying to staff on 10-5-15. Petitioner showed the actual pill bottle prescribed by Cumberland, Moubarek, at the disciplinary hearing and this incident was dismissed.

39.) On 10-5-15 petitioner was scheduled to see Physician McGann at 730 am for the vomiting of blood in the rec yard, however, petitioner still sick had diarrhea and could not make it to the 730 appt. Petitioner made the 830 am move and explained the situation to defendant Todd who was present, but sent petitioner away without being seen by the doctor. Defendant Hamilton-Rumer then gave petitioner a bogus incident report for unexcused absence on 10-6-15. Petitioner was sanctioned to 7 days loss of Commissary and appealed this issue, citing capricious and retaliatory actions of staff.

See Exhibit # 11

40.) Petitioner emailed defendant Arviza given his deteriorating condition, and his fears had more foundation, as staff's antics in trying to deter petitioner from pursuing adequate medical treatment was clear.

41.) The failure to follow pro standards or even medical care protocols, may support a finding of deliberate indifference, because the standards or protocols can be evidence of the practictioners knowledge of the risk posed by the particular symptoms or conditions. In these cases Courts give substantial weight to expert testimony criticizing the prisoners care, rather than dismissing it as a difference of opinion among doctors. Rogers v. Evans, 792 F.2d at 1058; Smith v. Jenkins, 919 F.2d at 94, Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990).

When prison medical staff or officials refer a prisoner to an outside consultant, they are in effect conceding that their own judgment is not sufficient to address the prisoners medical condition, and if they disregard the consultant's directions, they should at a minimum be required to provide a convincing explanation for their choice, and not merely to label the matter as a difference of medical opinion.

It is medical judgment with respect to the particular patient to which the courts defer under the deliberate indifference standard. Prison personnel sometimes respond to allegations of deliberate indifference by saying that they did provide some medical care, or that your medical care was adequate in general. But prison officials must respond to all of the petitioners serious medical

needs, and the fact that a petitioner is treated properly on some occasions does not excuse deliberate indifference on others. A claim that officials continuously assessed and monitored prisoners conditions does not excuse the failure to provide treatment when treatment is needed.

42) On 10-6-15 defendant Moubarek contacted Temple Trauma doctor Abhijit Pathak, who suggested that some form of imaging be performed to rule out fistulas or other issues with petitioners abdominal wall because Trauma had nothing to go off except what Moubarek reported. It is well known that petitioners issues are the domain of trauma surgeons, and plastic surgeons.

See Exhibt #12

43) On 10-13-15 Regional Director denies petitioner's appeal saying: medical plan of care developed and implemented by the primary care provider team is adequate and complete, and that petitioners condition has been sufficiently addressed and prescribed medication and treatment is appropriate. Petitioners prescription medication, however, was discontinued 6-26-15 without an examination and told to buy Tylenol from Commissary for his extreme pain.

See also Exhibt #7

44.) On 10-18-15 petitioner contacted Pennsylvania
Congressman and signed a privacy release form
See
Exhibit #13
requesting assistance and preventing this torture.

45) On 10-21-15 petitioner was approved for CT scan at
an outside hospital but it was not scheduled until
See
Exhibit #14
11-9-15.

46.) On 10-28-15 petitioner appealed the Regional
Directors response to Central office and on
10-29-15 petitioner was called to Psychology and
See
Exhibit #15
questioned by defendant Hershenberger about what
plaintiff filed thus far concerning his medical
issues, and asked what stage is his complaint, then
joked that he may have to harass petitioner
within which petitioner submitted an e-mail to
defendant Stewart detailing this encounter asking
to be left alone. Petitioner was again called to
psychology a few days later as a slap in the face.

47.) On 11-12-15 defendant McGann informed petitioner
that the CT scan was negative for fistulas but normal
for someone in petitioners condition. Petitioner then
questioned the extreme pain, metal wires and his
stomach continuously leaking since 8-17-15? McGann
stated that she would contact Moubarek on Monday
(which is her days off) to see if he would reach out
again to Temple doctors since he is the one that

spoke to them on 10-6-15 concerning all of this.

48) On 11-17-15 Central Office denies petitioners appeal stating the records reflect petitioner has received medical care and treatment in accordance with evidence based standards of care within the scope of Services of the Federal Bureau of Prisons.

See also Exhibit #15

Under the Constitution, prison officials need provide care only for serious medical needs. Many courts have held that a serious medical need is one that is so obvious that even a lay person would easily recognize the necessity of a doctors attention. Petitioner is a young man that have not exercised in months because of pain and fear that his abdomen will fall out and split open. Please see photos of abdomen taken 11-24-15.

49) On 11-18-15 petitioners abdomen now has a fleshy protrusion of meat sticking out of his stomach that looks like a tongue due to the reckless disregard of the officials here at Cumberland. The duty nurse asks McGann to take a look at this fleshy protrusion, she did, then stated "just keep it covered."

50) On 11-24-15 petitioner at his daily dressing change since 8-26-15 had another encounter with defendants Moubarek, Foote, and Todd who

See Exhibit #16

had another consent form for medical
photography. Petitioner asked the purpose of this
and defendant Moubarek stated he heard that
petitioner was having more problems and wanted
to take photos to send to Temple Surgeons.

## Deliberate Indifference

51.) On 11-24-15 after signing consent for more photos,
petitioner is asked to lift his shirt, lie back and
relax. The completely saturated dressing is removed
within which Moubarek asks Todd to pass him a
Q-tip, and he does. Moubarek then proceeds to try
and stuff the protruding flesh back inside the hole
in petitioners stomach causing extreme pain.
Petitioner yells out and asks what is Moubarek
doing, informing him that it is a metal wire
underneath the protrusion of flesh and that he
is and has hurt petitioner bad. Moubarek then
passes the Q-tip to Foote who attempts to do
the exact same thing while Moubarek start
taking pictures. Petitioner is livid at this point.

52.) Petitioner in extreme pain informs defendant
Arviza of this encounter, seriously seeking aid
via e-mail, to no avail. Petitioner then has his
6 month Team meeting with defendants N.Muir
and Fazenbaker and asks his status at

Cumberland, and request a medical transfer; instead petitioner is met with resistance, his fine is enhanced, and he is told that the detainer prevents him from being transferred. Petitioner then See Exhibits #17 e-mails the records office and Ms. Roberts reply saying "I do not currently have a detainer". On 12-2-15 petitioner emails the Administrative Remedy Coordinator requesting final disposition from Central Office, thereby, exhausting the remedies concerning the custody classification issue. Petitioners unnecessary pain and suffering is now before the Court with many exhibits to consider.

## Claims For Relief

53) The actions of defendants without need or provocation or in failing to intervene to prevent the pain and suffering were done maliciously and sadistically, causing more pain and suffering.

54) The rendering of medical services by unqualified medical personnel is deliberate indifference as is the failure to provide access to specialist care that petitioner's particular condition requires. The denial of access to a doctor capable of assessing the need for post-operative treatment constitutes cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution.

55.) The failure of defendants Stewart and Arviza, to provide adequate medical staff and medical care after being repeatedly complained to for months about access to medical care petitioner is legally entitled to, or transfer to a medical facility or outside specialist, denies petitioner Due Process of Law in violation of the Fourteenth Amendment to the United States Constitution.

56.) Petitioner prays this Court take notice that at every juncture defendants have smilingly turned aside all reasonable requests for medical intervention that could save his stomach, alleviate unnecessary pain and save petitioners life.

Relief Requested

WHEREFORE, petitioner requests the Court grant the following relief:

A.) Issue a Declaratory Judgment stating that:

1.) The unnecessary and wanton infliction of pain caused by defendants Moubarek, Foote, McGann and Hamilton-Rumer violated the petitioners rights under the Eighth Amendment of the U.S. Constitution and constituted deliberate indifference.

2.) Defendants Stewart and Arviza's failure to take action to curb the reckless disregard and carelessness of medical staff's abuse of petitioner violated the

petitioners rights under the Eighth Amendment of the U.S. Constitution.

B.) Issue an injunction mandating defendants Stewart and Arviza or their agents to:

1.) Immediately arrange for plaintiff to be examined by a qualified physician.

2.) Immediately arrange for petitioners needs for medical treatment to be evaluated by a medical practictioner with expertise in bioprosthetic mesh replacement and abdominal surgeries.

3.) Carry out without delay the treatment directed by such medical practictioner and transfer petitioner to a medical facility or prison close to Temple University Hospital as it relates to his particular condition.

4.) Petitioner seeks damages against those liable.


Respectfully Submitted,

Joshua Moses

#55716-066

FCI-Cumberland

P.O. Box 1000

Cumberland, MD 21501


12-6-15