**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

| | |
|---|---|
| JOSHUA MOSES,<br><br>Plaintiff,<br><br>v.<br><br>MOHAMED S. MOUBAREK,<br>CHRISTOPHER TODD,<br>LISA HALL,<br>PHIL BOCH,<br>KRISTINE SWICK,<br>MICHELE VOORHEES and<br>THE UNITED STATES OF AMERICA,<br><br>Defendants. | Civil Action No. TDC-15-3875 |

## MEMORANDUM OPINION

Plaintiff Joshua Moses, formerly an inmate at the Federal Correctional Institution in Cumberland, Maryland ("FCI-Cumberland"), has filed suit against the United States of America and several FCI-Cumberland medical providers, Defendants Dr. Mohamed S. Moubarek, Christopher Todd, Lisa Hall, Phil Boch, Kristine Swick, and Michelle Voorhees (collectively "the Medical Defendants"). Presently pending before the Court is Defendants' Motion to Dismiss the Second Amended Complaint. The Court has reviewed the operative pleading and the briefs and finds no hearing necessary. D. Md. Local R. 105.6. For the reasons set forth below, Defendants' Motion to Dismiss will be DENIED.

## BACKGROUND

Much of the factual background of this case is set forth in the Court's September 9, 2016 Memorandum Opinion denying the Motion for a Preliminary Injunction, *Moses v. Stewart* ("*Moses I*"), No. TDC-15-3875, 2016 WL 4761929, at *1-5 (D. Md. Sept. 9, 2016), and the Court's

September 26, 2017 Memorandum Opinion denying Defendants' first Motion to Dismiss, or in the Alternative, for Summary Judgment, *Moses v. Stewart* ("*Moses II*"), No. TDC-15-3875, 2017 WL 4326008, at *1-4. The Court incorporates by reference that factual background, summarizes only those portions of that history most relevant to the pending Motion, and describes in detail only the new facts alleged in the Second Amended Complaint.

## I. Factual Background

In 2009, Moses was shot multiple times in his torso, resulting in serious injuries that required multiple operations to repair. In 2014, Moses was taken into custody on federal criminal charges, and on May 26, 2015, after being convicted on those charges, he was transferred to FCI-Cumberland to serve his sentence. Soon after his arrival at FCI-Cumberland, Moses notified medical staff of his concern about what appeared to be a piece of metal wire protruding from a prior surgery site in his abdomen. As detailed in this Court's prior opinions, Moses persistently complained to FCI-Cumberland medical staff about the continued protrusion of that piece of wire, accompanied by oozing and possible infection in the flesh around it, and repeatedly requested, but did not receive, a surgical consultation. *See Moses I*, 2016 WL 4761929, at *2; *Moses II*, 2017 WL 4326008, at *1-2.

In February 2016, Moses was temporarily moved to the Curran-Fromhold Correctional Facility ("CFCF"), a county prison located in Philadelphia, Pennsylvania, pursuant to a writ of habeas corpus issued to ensure Moses's presence as a witness in an unrelated criminal proceeding. In March 2016, Moses was examined by Dr. Mohammed Haque, a CFCF physician, who referred him for a surgical consultation at Temple University. According to Moses, Dr. Haque asserted that "no prison doctor is qualified to treat his condition or pain." 2d Am. Compl. ¶ 69, ECF No. 131. A surgical consultation was scheduled for April 8, 2016, a date that ultimately conflicted

with his scheduled court appearance. Moses was transferred back to FCI-Cumberland without having had the surgical consultation.

Back at FCI-Cumberland, Moses emailed Dr. Moubarek multiple times to request an examination based on the wires protruding from his abdomen and the resulting pain. During a May 19, 2016 examination by Dr. Stephany McGann, Moses asked why he never received the surgical consultation that she had approved on November 20, 2015, before his temporary transfer to CFCF. Dr. McGann told Moses that Dr. Moubarek had denied that consultation. Moses again emailed Dr. Moubarek but received no response.

On May 25, 2016, Moses began vomiting blood in his cell. After an hour of delay, Moses was seen by Defendant Christopher Todd, an FCI-Cumberland nurse, who allegedly stated that Moses had “genuine complaints and issues,” and that “[s]ome mornings,” Todd “wan[ted to] scream at Moubarek and ask him what is he doing.” *Id*. ¶ 79. Although Todd informed Moses that Dr. McGann would see him, she told Moses that he had to wait to be seen by Dr. Moubarek. When Dr. Moubarek arrived a few hours later, he refused to see Moses and instead sent him back to Dr. McGann. During that encounter, Dr. McGann again stated that Dr. Moubarek had canceled her previous request for a surgical consultation, but she agreed to resubmit it. Nothing came of that request. Instead, in March 2017 and again in April 2017, another member of the prison medical staff submitted separate requests for a surgical consultation for Moses. The second of these requests was approved on April 20, 2017. On May 18, 2017, Moses had outpatient surgery to remove the protruding wires. In June 2017, Moses was transferred to another federal prison.

**II. Procedural History**

In December 2015, Moses, then self-represented, filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241, as well as a Motion for a Temporary Restraining Order and a

Preliminary Injunction, naming various medical and other prison staff at FCI-Cumberland as Defendants. In his filings, Moses asserted that in failing to address the protruding wires, the defendants had been deliberately indifferent to a serious medical need, in violation of his right under the Eighth Amendment to the United States Constitution to be free from cruel and unusual punishment. Based on the substance of his various filings, the Court construed his claim as a civil rights action under *Bivens* v. *Six Unknown Named Agents,* 403 U.S. 388 (1971). *Moses I*, 2016 WL 4761929, at *1, *5. The Court denied the motion but ordered Defendants to answer or otherwise respond to his claims. *Id.* at *8.

In October 2016, Defendants filed a Motion to Dismiss, asserting that several Defendants were immune from suit, that the remaining Defendants were entitled to qualified immunity, and that Moses failed to state a claim upon which relief could be granted. The Court granted that motion in part, finding that certain Defendants had immunity because they were employees of the United States Public Health Service. *Moses II*, 2017 WL 4326008, at *4. The Court otherwise denied the motion. *Id.* at *8. In December 2017, the remaining Defendants filed an Answer to an Amended Complaint that Moses, with the benefit of counsel, had filed in November 2017. ECF Nos. 86 & 89. Soon after the commencement of discovery, Moses's counsel moved to withdraw, and pro bono counsel was appointed. The case was then stayed at the request of the parties, to account for difficulties in the transfer of records between Moses's previous and new counsel. In September 2018, the parties briefly re-entered discovery, but in November 2018, the case was again stayed to enable Moses to exhaust administrative remedies relating to a claim under the Federal Tort Claims Act, 28 U.S.C. § 2671–80 (2018).

On February 15, 2019, Moses filed with the Bureau of Prisons ("BOP") an administrative claim under the FTCA. The BOP denied that claim on August 19, 2019. In October 2019, the

parties asked the Court to lift the stay and proposed a schedule whereby Moses would again amend his Complaint. The Court approved the proposed schedule, and on November 11, 2019, Moses filed another Amended Complaint in which he asserted two claims: (1) a *Bivens* claim against the Medical Defendants based on the alleged failure to provide constitutionally adequate medical care; and (2) an FTCA claim against the United States for negligent medical treatment.

On January 2, 2020, Defendants filed a second Motion to Dismiss in which they argued that Moses's FTCA claim is barred because Moses failed to comply with Maryland exhaustion requirements for medical malpractice claims. Alternatively, Defendants argued that Moses's FTCA claim fails because it was filed outside the two-year statute of limitations. Defendants further asserted that because Moses's FTCA claim fails, the FTCA judgment bar, 28 U.S.C. § 2676, mandates that his *Bivens* claim also fails. On January 30, 2020, with mutual consent of the parties and in response to arguments raised in the second Motion to Dismiss, Moses filed what was identified as the Second Amended Complaint, which added allegations relating to Moses's compliance with the Maryland exhaustion requirements for medical malpractice claims. Based on that Second Amended Complaint, the parties agree that Defendants' arguments as to state exhaustion requirements are moot. The parties further agree that the Court may now consider the remaining arguments in the second Motion to Dismiss as applicable to the Second Amended Complaint.

## DISCUSSION

The second Motion to Dismiss hinges on one contention: that because Moses first began receiving what he contends to be negligent medical treatment at FCI-Cumberland soon after his arrival in that facility on May 26, 2015, but did not file his FTCA claim until February 15, 2019, that claim falls outside the FTCA's two-year statute of limitations period. Defendants argue that

the FTCA judgment bar, in turn, precludes Moses from asserting any constitutional claim based on the same operative facts. Moses opposes the Motion based on the contention that the continuous treatment doctrine tolled the statute of limitations period.

## I. Legal Standard

To defeat a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005).

## II. FTCA

An FTCA claim is "forever barred" unless an administrative complaint is filed with the appropriate federal agency "within two years after such a claim accrues." 28 U.S.C. § 2401(b). In the context of medical negligence claims, that accrual date defaults to the date on which the plaintiff gained "possession of the critical facts that he has been hurt and who has inflicted the injury." *United States v. Kubrick*, 444 U.S. 111, 122 (1979). However, under the continuous treatment doctrine, "the statute of limitations does not begin to run on a medical malpractice claim upon a claimant's initial discovery of an injury and its cause so long as the claimant remains under the 'continuous treatment' of a physician whose negligence is alleged to have caused the injury." *Miller v. United States*, 932 F.2d 301, 304 (4th Cir. 1991). In such instances, the accrual date is the date the continuous treatment stops. *Id.* The rationale behind the doctrine is one of concern

about the doctor–patient relationship. A "rigid application" of the FTCA statute of limitations might "deprive a medical patient of her right to place trust and confidence in her physician," *id.* (citation omitted), or might prevent a patient from "benefit[ting] from his physician's corrective efforts without the disruption of a malpractice action," *Otto v. Nat'l Inst. of Health*, 815 F.2d 985, 988 (4th Cir. 1987). Under the continuous treatment doctrine, a patient "is excused from challenging the quality of care being rendered until the confidential relationship terminates." *Otto*, 815 F.2d at 988. The doctrine applies only "when the treatment at issue is for the same problem and by the same doctor, or that doctor's associates or other doctors operating under his direction." *Miller*, 932 F.2d at 305.

Defendants argue that Moses's continuing treatment at FCI-Cumberland under Dr. Moubarek's overall authority was interrupted by his temporary detention at CFCF from February 2016 to April 2016, during which he was seen by a different physician, Dr. Haque, relating to the protruding wire. They further argue that no link can be established between the CFCF medical staff and the FCI-Cumberland staff that would support the argument that Dr. Haque provided treatment to Moses under the direction of Dr. Moubarek or other FCI-Cumberland medical personnel. They therefore assert that Moses's claim accrued no later than February 2016, such that his February 2019 FTCA claim was untimely.

The Court is not persuaded. From the time he was designated to FCI-Cumberland in 2015 until he finally received surgery in May 2017, Moses consistently sought and received medical care relating to the protruding wire from the FCI-Cumberland medical staff under the leadership of Dr. Moubarek. As alleged in the Second Amended Complaint, Moses had approximately ten visits with FCI-Cumberland medical staff, five of which included Dr. Moubarek, from May 2015 to February 2016, when he was involuntarily and temporarily sent to CFCF. Then, when he

returned to FCI-Cumberland in April 2016, he had approximately four visits with FCI-Cumberland medical staff under Dr. Moubarek's direction relating to the same condition, before the May 2017 surgery. This course of treatment was continuous and ongoing throughout the two year period.

The single visit with Dr. Haque at CFCF did not break this chain of continuous treatment. First, the United States Court of Appeals for the Fourth Circuit has never held that a single medical visit to a different medical provider precludes the application of the continuous treatment doctrine where the primary course of treatment continued on after such a visit. In defining the doctrine, the Fourth Circuit has not focused on intervening medical visits but instead has held that the patient is excused from challenging the quality of care being rendered *until the confidential relationship terminates*." *Otto*, 815 F.2d at 988 (emphasis added). Notably, in *Miller*, the plaintiff was examined in 1983 at Fort Myer in Arlington, Virginia by a government physician, Dr. Bomar, who did not order a mammogram for her, had a medical visit in January 1984 at Walter Reed Army Medical Center ("WRAMC") with a different doctor who ordered a mammogram, then returned to Dr. Bomar for a visit in February 1984. *Miller*, 932 F.2d at 302. Although the court in *Miller* held that the continuous treatment doctrine did not apply to extend the accrual of the plaintiff's malpractice claim for failure to diagnose breast cancer past February 1984, because the treatment after that date was provided by other government doctors unaffiliated with Dr. Bomar, the court notably assumed without deciding that the continuous treatment by Dr. Bomar extended to February 1984, even with the intervening treatment by the WRAMC physician. *Id.* at 304-05. The court also focused on the fact that the plaintiff had a duty to inquire into the conduct of "a doctor with whom the personal relationship had terminated," reflecting that the key marker in the analysis is the end of the continuous treatment relationship with a doctor, rather than the presence of a single visit to another physician within that ongoing treatment relationship. *Id.*; *see Otto*, 815 F.2d

at 988. The Court therefore concludes that the continuous treatment doctrine extended the accrual of Moses's claim until his ongoing treatment for his condition by Dr. Moubarek ended in June 2017.

Second, even if a single instance of intervening medical treatment by an independent medical provider could sever the continuous treatment, Dr. Haque did nothing more than refer Moses for a surgical consultation that never took place. Notably, such a consultation would have been at Temple University, the same facility to which FCI-Cumberland had recently sent photographs of Moses's condition at Dr. Moubarek's direction. Thus, Moses received no actual treatment for his condition outside the network of medical providers approved by Dr. Moubarek and the FCI-Cumberland medical staff. *See Otto*, 815 F.2d at 989 (holding that the continuous treatment doctrine applied throughout the plaintiff's period of treatment where all of her treatment occurred at the National Institutes of Health or with physicians in consultation with NIH).

Third, Defendants' argument is based on a faulty analogy between Moses's situation as an incarcerated individual and that of a private citizen able to make personal healthcare choices. This is not a case in which Moses affirmatively chose to seek a second opinion or an alternative medical provider. *See Holland v. United States*, 302 F. Supp. 2d 484, 486, 488 (M.D.N.C. 2004) (holding that the continuous treatment doctrine did not apply where the plaintiff, dissatisfied with his treatment at the Veterans Administration, saw another physician on the advice of an attorney). Moses was sent to CFCF not for medical treatment but because he was subpoenaed to testify in a criminal proceeding. The visit was temporary and for that sole purpose, and it was understood that Moses would return to FCI-Cumberland after his testimony. Moses was examined at CFCF not because he sought out Dr. Haque, but because his medical condition was a serious one requiring regular clinical intervention and, as a prisoner, he could use only the medical facilities available to

him. Where Moses, in light of both the seriousness of his condition and his incarceration, "had virtually no alternative" but to make use of the only "possible treatment options" available to him as a prisoner, and did not actively choose to terminate his treatment relationship with FCI-Cumberland, the Court finds that finds that the continuous treatment period was not severed by the medical visit at CFCF. *Cf. Otto,* 815 F.2d at 989 (considering the fact that the uniqueness of the plaintiff's condition meant that treatment was available only at or in consultation with the National Institutes of Health in finding that the continuous treatment doctrine applied across visits with multiple doctors in different locations). The Court therefore concludes that the continuous treatment doctrine applied to toll the accrual of Moses's claim into and through the time period of his treatment and surgery after his return to FCI-Cumberland, which ended when he was transferred to another facility in June 2017.

Finally, the Court notes that even if Moses's visit with a CFCF doctor were deemed to have broken the chain of his continuous treatment at FCI-Cumberland, it is undisputed that from May 2016 to June 2017, Moses was under the continuous care of FCI-Cumberland medical staff, which was under Dr. Moubarek's direction. According to the Second Amended Complaint, during that one-year period, Moses continued to be denied a referral for a surgery consultation by Dr. Moubarek even though another FCI-Cumberland physician, Dr. McGann, had recommended it for a second time as early as May 2016. Further, a similar request in March 2017 by another member of the FCI-Cumberland medical staff was not approved, and Moses was not provided with surgery to remove the protruding wire until May 2017. These allegations alone are sufficient to permit Moses's FTCA claim to continue as to that time period.

## III. *Bivens*

Because the Court will deny the Motion to Dismiss as to the FTCA claim, Defendants' argument for dismissal of Moses's *Bivens* claim—that it is foreclosed by the FTCA judgment bar—necessarily fails because it is entirely dependent on dismissal of the FTCA claim. *See* 28 U.S.C. § 2676 (providing that "[t]he judgment in an action under [the FTCA] shall constitute a complete bar to any action by the claimant, by reason of the same subject matter, against the employee of the government whose act or omission gave rise to the claim").

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss will be DENIED. A separate Order shall issue.

Date: May 21, 2020

/s/ *Theodore D. Chuang*
THEODORE D. CHUANG
United States District Judge